```
                         IN THE
               UNITED STATES DISTRICT COURT
                        FOR THE
               WESTERN DISTRICT OF VIRGINIA
                  HARRISONBURG DIVISION
```

```
UNITED STATES OF AMERICA        :
                                :
                                :
            v.                  :        Criminal Nos. 5:11CR00045
                                :
JOHN STUART DOWELL              :
```

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF SENTENCING

Defendant, John Stuart Dowell, faces sentencing after pleading guilty before this court on October 3, 2012, to twelve counts of using a minor to engage in sexually explicit conduct for the purpose of creating visual depictions of that conduct (commonly referred to as production of child pornography) in violation of 18 U.S.C. §§ 2251(a) and (e), and one count of transportation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1). He faces a statutory minimum of 15 years of imprisonment up to a maximum of 4,560 months (380 years), to be followed by a period of supervised release between five years and life.[1]  He also faces a potential fine as well as forfeiture of various items[2].  The defendant's Sentencing Guidelines range is calculated as life,

---

[1]  The Guidelines recommend lifetime supervision for sex offense convictions.  <u>See</u> U.S.S.G. 5D1.2(b)(Policy Statement).

[2] The Government intends to return any property determined to neither have been used in the commission of the crime nor used to store contraband.

capped by the statutory maximum and thus the "range" is simply 4,560 months.

In light of the defendant's targeted sexual abuse and exploitation of two very young minors over a period of several months, the United States respectfully requests that this Court sentence the defendant to a sentence in accordance with the Guidelines calculations as set forth more fully below.

**FACTUAL BACKGROUND**

In late 2010 and early 2011, the defendant, JOHN STUART DOWELL, stayed at a residence in Frederick County, Virginia, where two young girls, who were then approximately three- and five-years-old, were living.  During this stay, Dowell sexually molested the three-year-old girl on numerous occasions and videotaped the abuse. Dowell additionally made two films that focused on the five-year-old girl's genital area.

Law enforcement officers first learned about some of these crimes when they obtained copies of some of the videos depicting the youngest girl in two ways.  First, in August 2011, the Bureau of Immigration and Customs Enforcement (ICE) was informed by Interpol that Danish law enforcement had downloaded sexually explicit video clips from the Internet which depicted the girl and Dowell.  While Dowell's identity was then unknown, it appeared that he and the victim were both United States citizens (the clips

2

contained audio and there were items in the clips that suggested that they were filmed in the United States).  ICE obtained a "John Doe" warrant and began on working to identify the adult male in the videos, who turned out to be the defendant.  At approximately the same time, a relative of Dowell's who resided in Florida turned over a copy of at least some of the same or similar video clips to the Federal Bureau of Investigation (FBI) and identified Dowell, the minor victim, and the Virginia residence that is depicted in the video.  The information provided by this relative led to Dowell's arrest in California on October 21, 2011, where he was then residing.  Prior to arresting the defendant, law enforcement officers observed him with a laptop on his lap and his pants down around his ankles.  Investigators recovered several computers and a camera that belonged to him.

A Department of Justice computer forensic examiner from the High Tech Investigative Unit (HTIU) of the United States Department of Justice, Criminal Division's Child Exploitation and Obscenity Section, examined the recovered digital evidence.  The review revealed several videos produced by the defendant which depict the primary, three-year-old victim engaging in sexually explicit conduct.  Multiple videos show the defendant touching the girl's genital area, licking and kissing her genital area, and licking and kissing her buttocks and anus.  The girl referred to the defendant's acts of licking her essentially as "drinking" her body

parts.  The defendant is seen in one video with his penis displayed and engaging in conversation with the girl about her touching his penis and telling her she could "drink" his penis too.  Dowell touches and strokes his penis during this video.  Metadata from the videos establishes that the different counts set forth in the Superseding Indictment are based on separate acts of production.

When watched chronologically, the videos depicting the three-year-old victim demonstrate that Dowell engaged in classic grooming behavior, gradually making the minor more comfortable with the abusive sexual conduct he imposed on her.  For example, the earliest videos depict Dowell engaging in "playful" behavior with the victim, such as wrestling and tickling her while repeatedly trying to pull down her underpants so that her genitals were visible to the camera, despite her questioning why he kept pulling down her underpants and her requests for him to stop.  The videos progress from this type of "play" to gradually more explicit sexual contact, beginning with Dowell telling the minor her underwear is "cute," to rubbing the minor's stomach and thigh, to remarking on a scratch the defendant says he sees in her buttocks area to explain his interest in touching her there, to rubbing the minor's vagina over her underwear, to touching her vagina under her underwear, then finally depicting the minor willingly lifting her dress to expose her vagina in preparation for Dowell touching, kissing and licking her vagina and anus.  Similarly, in earlier

4

videos, Dowell and the minor use the phrase "drinking your body" as a euphemism for the abuse, and in a later video, the minor adopts this phrase and affirmatively requests that Dowell "drink" her body.  One of the final videos depicts the defendant exposing his penis and asking the minor to touch it, which she reluctantly does. The defendant also asks the minor to "kiss it like I kiss you," which the minor refuses to do- indeed, she tells the defendant to pull his pants up.  Upon her refusal to touch his penis further, the defendant does not stop the sexual activity, but instead resumes the touching and licking of the minor's vagina and anus, to which she appeared to have grown accustomed. Viewed in their totality, the videos clearly show an initially apprehensive and questioning three-year-old become more and more comfortable with the abuse as Dowell slowly and methodically engages in progressively more explicit activity.

The video clips that were found on the Internet, which are a small subset of the depictions produced by the defendant, are described in more detail below:

• The video begins with white text on a blue screen.  It reads:

> "New Stuff 2011
> Videos 001-007 Merged
> (004 Missing)
> This is the only stuff of this
> Girl to be made"

• The video begins with a the minor girl lying on a bed.  She

is lying on her stomach and is naked from the waist down.
Dowell can be seen holding and moving the camera recording the
video.   Dowell begins licking the minor's anal area and
kissing her buttocks while periodically moving the camera for
filming from a different angle.

• The minor then stands on the bed and turns around to expose
her vaginal area.

• The minor gets off of the bed and lies down on her stomach
on the floor, still nude from the waist down.  Dowell begins
licking her anal area again.  He then tells her to turn over
and he begins intermittently licking her vaginal area and
rubbing her vagina with his finger, as well as kissing her
stomach and chest.

• They move from the floor and Dowell moves the camera.  The
minor is now fully dressed.

• Dowell is sitting down with his penis exposed.  He suggests
that the minor touch it and kiss it.

•  They then move to the floor again (Dowell carrying the
camera) and the minor lies down on her stomach.  Dowell pulls
her pants and underwear down and begins licking her anal area
and kissing her buttocks again.

• The video then cuts to the same minor wearing a blue dress.
She pulls down her underwear to her knees and lifts her dress
to expose her vaginal area.  Dowell takes her underwear off of

6

one leg and spreads her legs.  He positions the camera to film her vaginal area and begins intermittently licking her vaginal area, kissing her stomach and kissing her thigh.

• The video cuts to the camera moving and filming the minor lying on her back with her legs spread to expose her genital area.  She has the same blue dress on but it is pulled up to her chest.  Dowell again begins to intermittently lick her vaginal area and kiss her legs.  He then directs her to put her legs up and begins licking her anal area and vaginal area.

• Dowell then directs the girl to get up on her knees.  She is then on her knees with her head lying on a pillow.  He moves the camera to film her anal and vaginal areas from behind.  He then begins kissing and licking her vaginal and anal areas.  The video moves in a manner that indicates Dowell is holding or moving the camera the entire time.

• The video cuts to the minor in a pink dress with pink underwear.  Dowell maneuvers her so he can film her underwear. He lays her down and lifts her dress to expose her underwear. He then begins rubbing her vagina over her underwear.  He then runs his hands over her underwear and up and down her torso and legs.

• The video then cuts to the minor in pajamas.  Dowell helps her remove her clothing.  He then places the camera so it is filming from the floor.  He maneuvers the minor so he can film

7

her anal and vaginal areas from below while she is standing.

The additional videos that were found during the forensic analysis show similar activity.  On all videos, the defendant's face is clearly visible and there is no question that Dowell produced the films and was the man depicted engaging in sexual acts with the victim.

The HTIU examination also revealed two videos depicting a five-year-old girl produced by Dowell which focus on the girl's genital area, as referenced above.  One video shows the defendant focusing on this other girl's clothed (underpants) genitals.  The second video shows him pulling down the girl's underpants to focus on her genital area.

Metadata indicated that all of the videos described above were produced using a Canon camera that was consistent with the Canon camera that was recovered from Dowell at the time of his arrest in California. The Canon camera was manufactured outside of Virginia.[3] The metadata also provided information concerning the approximate dates and times when the various films were produced.  These dates were consistent with the information received during the investigation concerning when the defendant temporarily resided in the Virginia home where the films were produced.

---

[3]  The fact that the materials used to produce the child pornography traveled in interstate commerce provides one basis for jurisdiction.  The fact that the videos also actually traveled in interstate commerce and were found on the Internet provide other jurisdictional bases for the charges.

Investigators visited the Virginia residence and confirmed it was the same residence depicted in the video clips. They also obtained some articles of clothing from the residence that match what the younger victim was wearing in some of the videos. They also met the minor victims. The minors' parents confirmed the time period Dowell stayed at the residence and explained the circumstances surrounding the sexual abuse (e.g. that Dowell had been left alone with the minors at times).

The forensic analysis of Dowell's computers also revealed a large number - over 78,000 - of other non-self produced child pornography images and videos and erotica.[4] Indeed, of all of the images and videos recovered from the defendant's computers, approximately 85% depict minors engaged in sexually explicit conduct or constitute child erotica, and only approximately 10% depict adult pornography.

<u>PRESENTENCE REPORT</u>

The Presentence Report (PSR) prepared by the Probation Office correctly shows that Counts One, Two, Three, Five, Six, Seven, and Ten are driven by the base offense level 32 for production of child pornography, the tender age of Minor Girl A (+4 levels), the fact

---

[4] Note that the transportation of child pornography charge was essentially based on the transportation of the self-produced child pornography from the Western District of Virginia to California, although all of the child pornography recovered from the defendant's computers can be considered at sentencing as relevant conduct.

that Minor Girl A was then in the defendant's care or supervisory control (+2 levels), and the fact that the defendant knew or should have known that Minor Girl A was a vulnerable victim (+2 levels), resulting in offense levels of 40 for each of those counts. Counts Four, Eight, and Nine were similarly calculated but because those counts also involved the commission of a sexual act or sexual contact (+2 levels) involving Minor A, the offense level for those counts is 42.

The PSR likewise correctly calculated an offense level of 38 for Counts Eleven and Twelve, which involve Minor B, based on the base offense level of 32 for production of child pornography, the tender age of Minor Girl B (+4 levels), and the fact that Minor Girl B was then in the defendant's care or supervisory control (+2 levels).

Finally, the PSR correctly calculates an offense level of 44 for Count Thirteen, related to transportation of child pornography, based on a base offense level of 22, the fact that the defendant's collection included depictions of prepubescent minors (+2 levels), the defendant caused the distribution of the videos of Minor A via the Internet (+2 levels), the defendant's collection included images that portray sadistic or masochistic conduct (+4 levels), the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor as further defined in U.S.S.G. §2G2.2, Application Note 1 (+5 levels), the offence involved the

10

use of a computer (+2 levels), the defendant's collection included over 600 images of child pornography (+5) levels, and that the defendant knew or should have known that Minor A was a vulnerable victim (+2) levels.

In determining the adjustment for multiple counts, the PSR correctly calculates twelve units, with a greatest adjusted offense level of 44.  See PSR ¶¶ 199-120.  Because this case involves five or more units, an additional 5 levels are added, for a combined adjusted offense level of 49.  See PSR ¶¶ 121-122.  Subtracting 3 levels for acceptance of responsibility and then finally adding a Chapter 4 enhancement for qualifying as a repeat and dangerous sex offender under U.S.S.G. §4B1.5(b), there is a final addition of 5 levels, for a final combined offense level of 51.  However, because the maximum offense level under the Sentencing Guidelines is 43, that (43) is the final offense level.  See PSR ¶¶ 127-127.

Based upon a Criminal History Category I and total offense level 43, defendant's advisory sentencing guideline term of imprisonment is life.  Because the statutory maximum on each count is less than the advisory guidelines range of life imprisonment, the aggregated statutory maximum sentences on each count becomes the advisory guidelines range for each count, i.e., 30 years on each of Counts One through Twelve, and 20 years on Count Thirteen. See U.S.S.G. §5G1.1(a).

Further, U.S.S.G. §5G1.2(d) provides that the statutory

11

maximum sentences shall run consecutively:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.

U.S.S.G. §5G1.2(d). The "total punishment" under the sentencing guidelines in this case calls for life imprisonment. Because the aggregated statutory maximum sentences is less than the total guidelines punishment of life imprisonment, the sentences for the multiple counts should be run consecutively as the advisory guideline sentence. _See_ _United States v. Schellenberger_, 246 Fed.Appx. 830, 833 (4th Cir. 2007)(unpublished)("the guidelines instruct that if the total punishment mandated by the guidelines exceeds the highest statutory maximum, the district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment")(citation and internal quotations omitted). Accordingly, the PSR correctly states that defendant's advisory guideline range is 4,560 months (i.e., 30 x 12; + 20= 380 years).

### Vulnerable Victim Enhancement

The United States filed an Objection to the initial PSR regarding the absence of a two-level vulnerable victim enhancement

pursuant to U.S.S.G. § 3A1.1.  Probation reviewed this objection and amended its report to reflect the two-level enhancement in each of Counts 1-10, which relate to the then three-year-old victim. The United States expects that the defendant will object to the application of this enhancement in this case.

A vulnerable victim enhancement under USSG §3A1.1 may be applied when victims of child pornography offenses are especially young.  See United States v. Jenkins, 712 F.3d 209 (5th Cir. 2013). In United States v. Jenkins, a Fifth Circuit case which considered application of the vulnerable victim enhancement to calculation of a sentence in the context of a child pornography receipt/distribution/possession case, the court explained that, while § 3A1.1 generally does not apply when a factor such as age is already incorporated in the offense guideline, the additional enhancement was appropriate because of the presence of depictions of very young children in the defendant's child pornography collection.  In support of its holding, the Fifth Circuit cited a prior Ninth Circuit case, United States v. Wright, 373 F.3d 935 (9th Cir. 2004) which applied the enhancement because of the small physical size and characteristics of extreme youth associated with infants and toddlers (but did further note that these characteristics may vary with each child, see id. at 943).  These two cases appear to focus their attention on the fact that a very young child is developmentally different than an older minor in

13

significant ways and thus may be especially vulnerable to child pornography offenses.

While the videos in the present case make clear that the defendant's youngest victim ("Minor A") was able to walk well and had certain verbal skills, she had turned three approximately two months before the abuse began and was therefore vulnerable in ways that an 11-year-old, for example, would not be.  For example, given her age, Minor A could not comprehend the nature of the defendant's conduct, other than that he "played" with her.  As discussed above, the videos show the defendant engaging in successful grooming-type behavior, which in part demonstrates Minor A's particular vulnerability.  Notably, the <u>Jenkins</u> case was a child pornography trafficking case and did not involve the hands-on exploitation that is extensive in the present case.  Minor A's age and willingness to participate in the defendant's abusive "play" without any apparent understanding of the nature of the conduct demonstrate just how vulnerable she was.  As such, the vulnerable victim enhancement is entirely appropriate in this case.[5]

Distribution Enhancement

The defendant filed an objection to the two-level distribution enhancement in paragraph 110 of the PSR.  Defendant argues that a

---

[5] Even if the court is not persuaded that the vulnerable victim enhancement should apply, the youth of the victims should be considered in fashioning a reasonable sentence, which in this case should be a life sentence.

hacker is responsible for the distribution of the videos on the Internet.  Probation reviewed this objection but declined to amend the PSR, finding that the distribution enhancement is appropriate in this case.

Forensic analysis of the defendant's computer does not reveal how the videos were distributed on the Internet, nor does the analysis reveal conclusive evidence regarding the defendant's hacker claim.  Forensic analysis of his computer does, however, show that the defendant was a sophisticated Internet user who searched for child pornography and communicated with like-minded individuals using numerous technologies, such as Usenet newsgroups, Bittorrent, Freenet, and The Onion Router (TOR).[6]  As such, even if we cannot prove that the defendant personally uploaded the videos of Minor A to the Internet, he engaged in risky on-line behavior that made his computer a vulnerable target for those seeking to gain access to the child pornography on his computer.  But for the defendant producing the videos of Minor A and saving them to his computer, they would not have been found on the Internet, where they will remain for the rest of Minor A's life, resulting in further exploitation every time her image is viewed.  Since the investigation of this case, the videos of Minor A have been found in numerous child pornography collections around the country, and

---

[6]  TOR is an anonymizer which allows a computer user's IP address to appear as if it originated in a different location, including, a different country.

no doubt will continue to be found in others' collections.  The two-level distribution enhancement is, therefore, entirely appropriate in this case.

### Pattern of Activity Enhancement

The defendant filed an objection to the five-level pattern of activity enhancement pursuant to U.S.S.G. § 4B1.5(b)(1). Specifically, the defendant complains that applying the pattern of activity enhancements found in both U.S.S.G. § 2G2.2(b)(5) and § 4B1.5(b)(1) would result in impermissible double counting.  The Fourth Circuit squarely rejected this argument in United States v. Schellenberger, 246 Fed. Appx. 830, 832 (4th Cir. 2007) (unpublished), finding that the five-level enhancement under Chapter Four of the Guidelines is to be added to the offense levels determined under Chapters Two and Three, as the Guidelines are intended to be applied cumulatively.  As such, the PSR correctly included the five-level pattern of activity enhancement pursuant to U.S.S.G. § 4B1.5(b)(1).

### UNITED STATES' SENTENCING POSITION

A sentence called for by the sentencing guidelines (effectively a life sentence) would be reasonable under the circumstances in this case and meet the goals of 18 U.S.C. § 3553(a), in particular, based on the following factors:

### Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The production offenses in this case are despicable and

16

egregious.   The defendant betrayed the family of his two minor victims when he abused, molested, and exploited them for his own sexual gratification while they were under his care and control. Indeed, the evidence in this case makes clear that the defendant focused his attention on the youngest, three-year-old victim, likely because she was easier to manipulate and bend to his will than the five-year-old, who may have reported the abuse more readily than the younger victim.  A review of the child pornography images recovered from the defendant's computers clearly illustrates his sexual interest in children.   The offense conduct, however, makes clear that his collecting and viewing of other vile images of young children being molested  - offenses characterized as crimes of violence in and of themselves - were insufficient to satisfy his deviant sexual interests.   Rather, he sought and gained access to two minors and engaged in sexual acts with the youngest of the two to satisfy these interests.

Both the defendant and the government have submitted expert psychological evaluations for consideration and both experts will likely testify at sentencing.   In brief, for purposes of this memo, the defendant submitted the results of a psychological evaluation performed Dr. Jeffrey Fracher to argue that he is "unlikely to offend against children as his primary attraction has been to pornography and not to actual children with the one exception." Dr. Fracher Report at 9.  Dr. Fracher opines that "Mr. Dowell shows

17

no measured sexual interest in children of either gender" and that the abuse underlying the offense conduct was due to "proximity, opportunity, and his close emotional relationship with [the three-year-old victim]." Id. Notably, Dr. Fracher did not review any of the videos depicting the defendant engaged in sexual conduct with the minor, nor did he review any of the over 78,000 images of child pornography and child erotica recovered form the defendant's computer prior to concluding that he showed "no measured sexual interest in children.[7]" Also notable is the absence of any reference to a second victim. Moreover, Dr. Fracher's conclusion that the defendant "shows no measured sexual interest in children" is incomprehensible in light of the defendant's admission to Fracher that the defendant "began having sexual fantasies about children in the past several years" and all of his online an offline behavior involving the sexual abuse and exploitation of children.

The government's expert, Dr. Donna Moore, reviewed Dr. Fracher's report, met with the defendant, and reviewed a substantial portion of the evidence in this case, including the self-produced videos and numerous other relevant videos and images in the defendant's collection. Dr. Moore diagnosed the defendant as suffering from "pedophilia (attracted to females) non exclusive

---

[7]  Recently, Dr. Fracher finally availed himself of the opportunity to review at least some of the forensic evidence.

type." Dr. Moore Report at 16. In her report, Dr. Moore states that "[s]exual recidivism is predicted most robustly by sexual deviance traits as well as distorted thinking and misconduct. [The defendant's] misconduct with [Minors A and B] appears to be premeditated and pervasive. To state that his offending was 'opportunistic' is a misnomer as there is no opportunistic pedophilia because pedophilia is conventionally understood regarding attraction to males, females, or both genders, and is experienced as abiding and not something that someone learns or acquires." Dr. Moore goes on to conclude that "Mr. Dowell's sexual interest in children is inferred from the materials he reviewed and this trait has consistently been found as the greatest predictor of sexual recidivism. This evaluation notes a qualitative assessment of risk rather than offering a specific or quantitative one . . . but offers that Mr. Dowell is at risk for future sexual recidivism." Dr. Moore's report at 19.

Indeed, all of the evidence in this case supports the conclusion that the defendant has a sexual interest in children. As referenced above, the defendant had a large pornography collection on his computers. Over eighty percent of that collection was comprised of child pornography and child erotica images and videos, including images depicting infants and toddlers engaged in sexually explicit conduct. The forensic examination reveals that the defendant actively sought out this material, by,

among other means, (1) joining newsgroups dedicated to child pornography, (2) using peer to peer software to run searches for child pornography, (3) using TOR to download child pornography, and (4) running Google searches for child pornographic material. By his own admission, the defendant began viewing sexualized images of children in the late 1990's and continued up until his arrest in this case.

While defendant has no known criminal history in the sense that he has no prior prosecutions, he has an undeniable longstanding interest in the sexual abuse and exploitation of young children. In this case, he exploited two minors, including molesting the three-year-old victim numerous times over the course of months. Given the circumstances of this case and the history and character of the defendant, a guidelines sentence in this case is entirely appropriate and constitutes a reasonable sentence.

<u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment</u>

As set forth above, the defendant's conduct is reprehensible and there is simply no basis for any downward variance in this case. The defendant's exploitation of two minors under his care and custody, and his repeated molestation of the three-year-old, should be deemed to be on the more serious side of the offenses charged. Any downward variance would simply promote a lack of respect for the law and cannot be justified in this case.

<u>The Need to Afford Adequate Deterrence to Criminal Conduct</u>
<u>and Protect the Public from Further Crimes of the Defendant</u>

The sentence in this case must constitute a loud message to other offenders that the most extreme consequences will result for such abuse and exploitation of young victims.   Given the defendant's conduct in this case, a Guidelines sentence is wholly appropriate.   As stated above, the defendant's own statements and actions establish that he has a long standing sexual interest in children and the offense conduct demonstrates that he is unable to control his urges to act on this interest.

Although he has no criminal history (like almost all of the child pornography defendants who have previously come before this Court), the defendant has harmed numerous children (in both producing his own child pornography and in searching for and distributing other child pornography) and poses a future danger to them, and his sentence should address both the seriousness of his offenses and his future dangerousness.   A long term of imprisonment, such as one that guarantees that he will remain incarcerated for the duration of his life, also reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.   Lifetime supervised release (if he is released from imprisonment) will help to prevent future harm by the defendant.

Likewise, the sentence needs to afford adequate general deterrence.   This would be true even if the defendant had not

personally violated a child.  Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence.  <u>See</u>, <u>e.g.</u>, <u>United States v. Irey</u>, 612 F.3d 1160, 1206 (11th Cir. 2010) (citing <u>United States v. Ferber</u>, 458 U.S. 747, 760 (1982)) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product");[8] <u>Osborne v. Ohio</u>, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); <u>United States v. Goff</u>, 501 F.3d 250, 261 (3rd Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); <u>United States v. Barevich</u>, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these exploited children.  The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").  In <u>United States v. Goldberg</u>, 491 F.3d 668,

---

[8]   The <u>Irey</u> court noted that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses." 612 F.3d at 1206.

672 (7th Cir. 2007), the Seventh Circuit opined that:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded – both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

The Sixth Circuit in part reversed a district court when the district court failed to see any importance in general deterrence. See United States v. Bistline, 665 F.3d 758, 767 (6th Cir. 2012).[9] The district court had stated, "general deterrence ... will have little [if] anything to do with this particular case." Id. The Sixth Circuit found the district court's statement "inexplicable and in any event conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]" Id. (citing United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2010)).

The Need to Avoid Unwarranted Sentencing Disparities

As will be further set forth below, many child pornography producers have received Guidelines and/or lengthy sentences that have been affirmed on appeal. The Guidelines understandably calculate long advisory sentences for people like the defendant

---

[9]   While Bistline reversed an extremely short sentence, the opinion is a strongly worded opinion about the Guidelines and the seriousness of child pornography offenses.

because they have directly harmed children (and because of the prescribed goals of sentencing).  As stated above, a Guidelines sentence, as constrained, of course, by the statutory maximum in this case, would be a reasonable sentence and would reflect the seriousness of the defendant's offenses, promote respect for the law, deter future conduct, reflect the seriousness of the offense and provide the public with protection from future crimes.  Such a sentence would be sufficient but not greater than necessary to punish the defendant for his conduct, promote respect for the law, address the seriousness of his offenses and would accurately reflect all other sentencing factors.

There are numerous examples of sentences that have involved long and/or effectively life sentences for production of child pornography.  For example, in United States v. Sarras, 575 F.3d 1191 (2009), the Eleventh Circuit affirmed as reasonable a 100-year (1,200 months) sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim.  Id. at 1220-21.  The Sarras court noted several other child exploitation cases in which courts upheld lengthy sentences as substantively reasonable.  Id.  See United States v. Johnson, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for abusing and photographing three boys between the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. § 2251(e) and § 2252A(b)(1)); United States v.

Kapordelis, 569 F.3d 1291, 1318-19 (upholding as reasonable a 420-month sentence, which represented an upward variance from the 262-327-month advisory guidelines range and included 240-month sentences on counts charging production of child pornography under § 2251(a) and 180-month consecutive sentences on counts charging receipt of child pornography under § 2252A(a)(2)(A)); United States v. Huffstatler, 561 F.3d 694, 698 (7th Cir. 2009) (upholding as reasonable an above-guidelines, 450-month sentence for producing pornographic pictures of a 14-year-old boy); United States v. Raplinger, 555 F.3d 687, 695 (8th Cir. 2009) (upholding as reasonable a 457-month sentence for photographing and having sexual intercourse with a 15-year-old girl), cert. denied, 129 S.Ct. 2814 (2009); United States v. Betcher, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters), cert. denied, 129 S.Ct. 962 (2009); United States v. Vowell, 516 F.3d 503, 511-13 (6th Cir. 2008) (upholding as reasonable a 780-month sentence for a 40-year-old man who had sexual intercourse with his girlfriend's 8-year-old daughter while being videotaped by his girlfriend); see also United States v. Paton, 535 F.3d 829, 837-38 (8th Cir. 2008) (concluding that a life sentence for five counts of production of child pornography was not cruel and unusual punishment in violation of the Eighth Amendment); United States v.

Pugh, 515 F.3d 1179, 1202 ("[W]e have typically treated child sex offenses as serious crimes, upholding severe sentences in these cases").

Closer to home the Fourth Circuit has affirmed, *inter alia*, the following cases that involved, at least in part, production of child pornography convictions: United States v. Engle, 676 F.3d 405 (4th Cir. 2012)(affirming 480-month sentence which was the result of an upward variance); United States v. Mattocks, 408 Fed.Appx. 717 (4th Cir. 2011) (unpublished) (affirming 600-month sentence for one count of production of child pornography involving a 6-year old child and one count of transportation of child pornography); United States v. Ebersbach, 2012 WL 1743225 (4th Cir. 2011) (unpublished) (affirming 360-month Guidelines sentence); United States v. Martinez, 453 Fed.Appx. 342 (4th Cir. 2011) (affirming of denial of motion to withdraw guilty plea in case where defendant received 960-month sentence), cert. denied, 132 S.Ct. 1130 (2012).[10]

---

[10]  This Court recently sentenced a man to 120 years of imprisonment in United States v. Cobler, Criminal No. 5:12CR00026 (presently on appeal).  Two other recent cases in this district, United States v. Bruffy, Criminal No. 6:11CR00006 and United States v. Miller, Criminal No. 6:11CR00004 (presently on appeal solely for rulings on pretrial motions) resulted in 23-year and 25-year sentences respectively.  In Bruffy, the children were unaware that their images (which depicted primarily lascivious exhibition of the genitals and not sex acts between Bruffy and the minors) were taken since they were asleep for those images that clearly qualified as child pornography.  Miller, who was significantly older and also had health problems (indeed, he was arrested on a warrant from our district in Rome after he had a

As other recent examples, the Seventh Circuit affirmed a 396-month sentence for a 19-year old defendant who captured live-stream images of girls as young as 13 (he distributed at least one photo). The government had recommended a small break in his sentence for assistance and his sentence was below his guidelines range.  See United States v. Shea, 2012 WL 4373430 (7th Cir. 2012)(unpublished). The Eighth Circuit affirmed a 327 month sentence (the maximum potential sentence was 360 months which was reduced to reflect time served as part of a related state sentence) for a defendant's production of images depicting his 11-year-old daughter.  See United States v. Schupp, 2012 WL 435 4350766 (8th Cir. 2012) (unpublished).

While each case has unique factors, some aggravating some mitigating, in this case, the defendant's offenses are aggravated and worthy of severe punishment in accordance with many of the examples that are set forth above.  It is difficult to quantify, much less fathom, the harm and tragedy perpetrated in particular on the three-year-old child victim by the defendant, and it is impossible to predict its long-term effects on her, particularly given the fact that the videos the defendant produced of her are now available on and being downloaded from the Internet, where they

---

heart attack) had filmed an approximately 14 or 15 year old girl performing oral sex on the defendant.  The crimes were discovered after the girl had asked the defendant to take her away with him and they were found driving in the National Park.

may well remain for the rest of her life and beyond.[11]  Defendant supplemented his abusive conduct by downloading and collecting many graphic images and videos of other young children being raped and sexually abused or exploited in other ways, including images similar in nature to the abuse he perpetrated on the victims of his production charges.  Accordingly, the United States respectfully requests that, after considering the facts and circumstances of this case, the relevant guidelines, and the factors set forth in 18 U.S.C. § 3553(a), this Court sentence defendant in accordance with the Guidelines (and lifetime supervision should he be released from prison at some point).  As set forth above, such a sentence would be substantively (and procedurally) reasonable, serve the goals of general and specific deterrence, protect the public from future crimes by defendant by achieving his incapacitation, and afford justice to the child victim.

It bears noting that even if he had not engaged in contact offenses with a minor (and produced permanent depictions of that despicable conduct), the defendant's other child pornography activities demonstrate a danger to children as well.  As explained

---

[11]  As has been demonstrated repeatedly by Victim Impact Statements prepared by victims of child pornography crimes (or their parents or guardians), victims are traumatized not only by the physical exploitation but also gravely impacted by the knowledge that their images are freely available for pedophiles to collect and masturbate to.  Numerous Victim Impact Statements have been collected in this case and excerpts will be presented to the Court during the sentencing hearing.

by the Fifth Circuit:

> ...we have numerous victims in a case like this, not one
> victim.  Every image of a child, every image of a non-adult
> engaged in any type of sexual activity or any type of pose
> without clothing or any type of exploitation constitutes an
> additional case of victimizing a child.  Without a demand for
> that type of information and that type of viewing from persons
> like this defendant, we don't know how many child abuse cases
> we could prevent.  And as long as there is a demand to
> purchase images of child pornography, there is going to be an
> unending stream of child abuse of . . . children who are
> forced into these roles.
>
> ...every image has a child who has been exploited and
> abused, and that is the concern I have.  It is the
> concern that I have when people are engaged in serially
> doing this, the effect it has on children throughout the
> world and the effect it has on their future lives.

See United States v. Miller, 665 F.3d 114, 121-122 (5th Cir. 2011)

(quoting the district court), cert. denied, 132 S.Ct. 2773

(2012)(rejecting an attack on the child pornography sentencing

guidelines[12] and highlighting the grave harm caused to the victims

---

[12]  This Court is undoubtedly aware that U.S.S.G. § 2G2.2, the
Guideline used for most non-production offenses has been a recent
favorite target of the defense bar.  However, it is important to
note that the Fourth Circuit has not adopted - and has indeed
rejected - the view that the child pornography guidelines are not
worthy of a presumption of reasonableness because they were
developed pursuant to congressional dictates.  Indeed, in fairly
recently affirming a Guidelines sentence, the Fourth Circuit
stated:

> Strieper first contends that a presumption of
> reasonableness should not apply to sentences for child
> pornography offenses because the relevant Guideline was
> developed pursuant to congressional dictates rather
> than the Sentencing Commission's expertise.  We have
> previously rejected this view, however, and instructed
> courts "to give respectful attention to Congress'[s]
> view that [child pornography crimes] are serious
> offenses deserving serious sanctions."

depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

In finding the district court's observations sound and relevant, the Fifth Circuit stated:

> The district court in this case was cognizant of the undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by Miller and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way. If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today. No other child would be raped or sodomized or otherwise violated to produce pornographic images. Tragically, the reality is that there is a huge demand for "fresh" faces and images.

Id. at 123 (emphasis added). In the present case, the defendant is charged with producing his own child pornography, using very young children to stoke his perverse sexual interests and choosing to memorialize the exploitation and abuse. Of course, ha has harmed thousands of other children as well by amassing a large collection of other child exploitation images. Simply stated, the defendant is a sexual predator and should be sentenced accordingly.

Regarding his non-self produced collection, it is noteworthy

---

United States v. Strieper, 666 F.3d 288 (4th Cir. 2012)(citing and quoting from Morace, 594 F.3d at 347 (4th Cir.)(internal brackets in original).

that many qualify as depictions of violence and also depict very young children. "An offender's pornography and erotica collection is the single best indicator of what he wants to do." KENNETH V. LANNING, OFFICE OF JUVENILE JUSTICE AND DELINQUENCY PREVENTION, CHILD MOLESTERS: A BEHAVIORAL ANALYSIS—FOR PROFESSIONALS INVESTIGATING THE SEXUAL EXPLOITATION OF CHILDREN, 107 (5TH ED. 2010). As the Miller court stated:

> We also disagree that it is "illogical to differentiate between defendants who view or distribute images of prepubescent children being raped and sodomized, as one example under the Guidelines, and those defendants who view or distribute pornography that depicts minors who are not prepubescent engaged in sexual activity that is not violent or sadistic. We reject the view that because there are many defendants who view images of children under the age of 12 being raped and sodomized, and because there are many defendants who obtain hundreds of pornographic images of children, the terms of imprisonment should be reduced for all who receive or transport child pornography, regardless of the content of those images and regardless of the number of images. The Guidelines treat differing behavior differently, and in our view, that differentiation is not unreasonable.

665 F.3d at 123. See also United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011); ("Given the numerous images of very young girls in the appellant's possession, the [district] court was entitled to ponder, and to pass informed judgment on, questions such as whether he could conform his future actions to the norms of society and whether he posed a risk to young girls."); United States v. Aumais, 656 F.3d 147, 157 (2d Cir. 2011) ("[G]iven the violent nature of the images, the number of them, and other considerations,... [t]he sentence is substantively reasonable.");

United States v. Cunningham, 2012 WL 593110 (6th Cir. Feb. 24, 2012); (affirming sentence where district judge reviewed all of the images to judge the defendant's conduct, and considered, as "the nature of those images, the age of the children, [and] the conduct depicted in the images" along with the other 3553 factors).

For the reasons set forth above, the United States' position is that a Guidelines sentence in this case should be imposed based on the seriousness and breadth of the defendant's offenses.

Sentencing Exhibits and Testimony

As stated above, the United States intends to present testimony of Dr. Donna Moore at the sentencing proceeding. The United States also intends to present testimony of James Fottrell, Director of the High Tech Investigative Unit of the United States Department of Justice, Criminal Division's Child Exploitation and Obscenity Section.[13] The United States also intends to present to this Court a sampling of videos the defendant produced (or excerpts therefrom) and the images that were recovered from his computer. Excerpts from Victim Impact Statements will be presented during sentencing hearing as well. The United States reserves the right to present additional testimony, other exhibits, and a supplemental filing in response to any memoranda or exhibits that the defendant

---

[13] Dr. Moore's report has already been filed under seal. The United States may also introduce during the sentencing hearing the curriculum vitae of Dr. Moore and Mr. Fottrell as well as certain forensic reports and exhibits.

files or chooses to introduce in furtherance of sentencing.

<u>18 U.S.C. § 3509(d) Privacy Concerns</u>

Finally, the United States respectfully requests that all parties and the Court be mindful about the privacy laws and concerns set forth in 18 U.S.C. § 3509(d).  The government requests that any witness who testifies not identify the victims or set forth any other information that would lead to their identification.  If any of the victims' family members testify or allocute, we would ask the Court to either not put their names in the record, to use first names only, or to use their initials only.

Respectfully submitted,

TIMOTHY J. HEAPHY
United States Attorney

s/ Nancy S. Healey
Nancy S. Healey
Assistant United States Attorney
VSB No. 39447


s/ Darcy F. Katzin
Trial Attorney
United States Department of Justice
Child Exploitation and
      Obscenity Section

**CERTIFICATE**

I hereby certify that on July 11, 2013, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to R. Darren Bostic, Esq., counsel for the defendant.

s/ Nancy S. Healey
Nancy S. Healey
Assistant United States Attorney