## PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 13-4576

———————

UNITED STATES OF AMERICA,

         Plaintiff - Appellee,

    v.

JOHN STUART DOWELL,

         Defendant - Appellant.

———————

Appeal from the United States District Court for the Western
District of Virginia, at Harrisonburg.   Michael F. Urbanski,
District Judge.  (5:11-cr-00045-MFU-1)

———————

Argued:  September 19, 2014          Decided:  November 13, 2014

———————

Before DIAZ and THACKER, Circuit Judges, and Paul W. GRIMM,
United States District Judge for the District of Maryland,
sitting by designation.

———————

Affirmed by published opinion.   Judge Grimm wrote the opinion,
in which Judge Diaz and Judge Thacker joined.

———————

**ARGUED:**  Russell Darren Bostic, BOSTIC & BOSTIC, PC,
Harrisonburg, Virginia, for Appellant.  Nancy Spodick Healey,
OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia,
for Appellee.  **ON BRIEF:** Darcy Katzin, Child Exploitation &
Obscenity Division, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C.; Timothy J. Heaphy, United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for
Appellee.

———————

GRIMM, District Judge:

John Stuart Dowell, having pleaded guilty to twelve counts of production of child pornography and one count of transportation of child pornography, appeals his 960-month sentence. On appeal, Dowell argues that his sentence violates the Eighth Amendment's prohibition of cruel and unusual punishment and is both procedurally and substantively unreasonable under 18 U.S.C. § 3553(a).

We hold that the district court erred in its Guidelines calculation when it incorrectly applied an upward adjustment for a "vulnerable victim" pursuant to U.S.S.G. § 3A1.1(b)(1) based upon one of the victims' age-related cognitive development and psychological vulnerability, factors that already were incorporated into an upward adjustment for the young age of Dowell's victims pursuant to U.S.S.G. §§ 2G2.1(b)(1) and 2G2.2(b)(2). However, because we find that error to be harmless and reject the remainder of Dowell's challenges, we affirm.

I.

A.

The relevant facts are undisputed. In late 2010 and early 2011, John Stuart Dowell was staying at a residence in Frederick County, Virginia. Over that time, Dowell recorded several videos of himself engaging in escalating sexual contact with a

2

three-year-old girl ("Minor A") and displaying the genitals of a five-year-old girl ("Minor B"), both of whom lived in the residence.  The videos were stored on Dowell's personal computer and posted on the Internet, where Danish law enforcement officers discovered them and notified the Bureau of Immigration and Customs Enforcement of the videos' existence in August 2011. Around that same time, a relative of Dowell's turned over some of the same video clips to the Federal Bureau of Investigation and identified Dowell, the residence, and the children in the videos.  An arrest warrant was issued and Dowell was arrested on October 26, 2011 at his residence in California.

A forensic examination of Dowell's computers uncovered over 70,000 pornographic images and videos, of which approximately seventy-five percent depicted child pornography or child erotica, and an additional ten percent comprised sexually explicit drawings of minors.  The examination also revealed several videos of Minor A and Minor B, including depictions of Dowell touching, licking, and kissing the genital area of Minor A and exposing the genitals of Minor B.  On December 14, 2011, a federal grand jury initially returned an indictment charging Dowell with one count of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e).  A superseding indictment was returned on April 25, 2012, charging Dowell with twelve counts of production of child pornography -- ten with

respect to Minor A and two with respect to Minor B -- and one count of transportation of child pornography in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1). On October 3, 2012, Dowell entered a plea of guilty to each count of the superseding indictment.

B.

During a lengthy sentencing hearing lasting over seven and one-half hours and comprising over 250 pages of transcript, the district court heard testimony regarding the quantity and nature of pornographic material on Dowell's computer and viewed the videos that he had produced of Minor A and Minor B. The court also heard expert testimony from a psychologist, who expressed the opinion that Dowell is a pedophile, "sexually attracted to females, nonexclusive type" -- meaning that he is attracted to adults as well as to children. J.A. 210.[1] The psychologist also opined that, although the relevant evaluative measures suggested that Dowell was a relatively low risk to reoffend, those measures often are incomplete and pedophilia nevertheless is a chronic condition that is unlikely to go away as Dowell ages.

The court also heard argument on certain enhancements recommended in Dowell's Pre-Sentence Report (the "PSR"). As

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

relates to this appeal, Dowell argued against the PSR's recommendation to apply both a five-level enhancement with respect to count thirteen for transportation of child pornography because Dowell "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor" pursuant to U.S.S.G. § 2G2.2(b)(5) and an additional five-level adjustment to the total offense level for "engag[ing] in a pattern of activity involving prohibited sexual conduct" pursuant to U.S.S.G. § 4B1.5(b)(1). J.A. 348-49; see id. at 361. Relying on the well-established principle that double counting is authorized unless the Guidelines expressly prohibit it, the district court applied both increases.

At sentencing, Dowell also challenged the PSR's recommendation that he receive an enhancement for a "vulnerable victim" pursuant to U.S.S.G. § 3A1.1(b)(1) with respect to counts one through ten and count thirteen, which was added in response to an earlier objection to the PSR by the Government. Dowell contended that, because the age of the victims already was accounted for by enhancements for victims under twelve years of age contained in U.S.S.G. §§ 2G2.1(b)(1)(A) and 2G2.2(b)(2), the vulnerable victim adjustment could not be applied simply because Dowell's victims were considerably younger than twelve. Relying on United States v. Jenkins, 712 F.3d 209 (5th Cir. 2013), and United States v. Wright, 373 F.3d 935 (9th Cir.

2004), the district court concluded that, "though the characteristics of being an infant or toddler tend to correlate with age, they can exist independently of age, and are not the same thing as merely not having attained the age of 12 years." J.A. 171. Accordingly, the district court applied the vulnerable victim enhancement with respect to Minor A based on her cognitive development and "unique concerns about the moral and psychological development of the child" that, though related to her age, can exist independently of age and "recognize a vulnerability beyond age per se." Id.

Following the testimony, arguments from counsel, and Dowell's allocution, the court calculated Dowell's Guidelines range as follows:

With respect to counts one through twelve, the court adopted the recommendations of the PSR, applying a vulnerable victim enhancement to counts one through ten relating to Minor A, as well as several other sentencing enhancements that are not challenged on appeal. This yielded a total offense level of 40 with respect to seven counts (counts one to three, five to seven, and ten); a total offense level of 42 with respect to three counts (counts four, eight, and nine); and a total offense level of 38 with respect to two counts (counts eleven and twelve). For count thirteen, the court rejected the PSR's recommendation for an enhancement for distribution of child

6

pornography under § 2G2.2(b)(3)(F), but otherwise adopted the PSR's findings, including a vulnerable victim adjustment because of Minor A's extremely young age and an enhancement for a pattern of activity involving the sexual abuse of a minor pursuant to § 2G2.2(b)(5), yielding a final offense level of 42 for that count.

Pursuant to the Sentencing Guidelines' provisions for multiple counts, § 3D1.4, the court applied a five-level increase. The court then decreased the offense level by three levels for acceptance of responsibility under § 3E1.1(a)-(b), yielding an offense level of 44. The court then applied an additional five-level increase under § 4B1.5(b)(1) for a pattern of activity involving prohibited sexual conduct, yielding a final total offense level of 49, which pursuant to Chapter 5, Part A of the Sentencing Guidelines, is treated as a level 43, the highest possible offense level. For all criminal history categories, the Guidelines range for level 43 is life imprisonment.

Both the Government and the PSR recommended a total sentence of 4,560 months, calculated by adding the statutory maximum for each count consecutively pursuant to U.S.S.G. § 5G1.2. However, the district court found the recommended sentence to be unrealistic and not required by § 5G1.2, and, in light of Dowell's age, determined that a sentence of 960 months

7

was tantamount to a life sentence. As the district court explained, "under this guideline range the defendant will be 127 years [old] when this term runs out . . . . Given his age, there's no practical reason, no reason under the guidelines or the case law, to calculate the guidelines to run any additional sentences consecutive beyond the 960 months." J.A. 308.

After considering the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the court imposed what it characterized as a Guidelines sentence of 960 months' imprisonment, calculated as "the extent necessary to produce a combined sentence equal to the total punishment of life." J.A. 307. In explaining its reasoning, the court said, "[a]s regards that three-year-old child, this crime is predatory. This crime is premeditated. This crime is calculated. This crime was designed to get that child to a point where she, in her young, young, young, and undeveloped cognitive state, became interested in this behavior," id. at 311, and noted as well that the videos that Dowell made in Virginia had been distributed as far away as Denmark. The court also found that "this defendant spent ten years involved in child pornography, touched these children, molested this one girl, videoed it, and kept right on viewing it until he was arrested. To protect the public from Mr. Dowell . . . demands a life term." Id. at 313. Dowell appealed.

8

II.

Dowell challenges his sentence as a violation of the Eighth Amendment's prohibition of cruel and unusual punishment on the grounds it is disproportionate to the severity of his crimes. We review <u>de novo</u> constitutional claims, including whether a sentence is proportional under the Eighth Amendment. <u>United States v. Myers</u>, 280 F.3d 407, 416 (4th Cir. 2002).

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" <u>Graham v. Florida</u>, 560 U.S. 48, 59 (2010) (quoting <u>Weems v. United States</u>, 217 U.S. 349, 367 (1910) (emendation in original)). Accordingly, a disproportionate sentence may be cruel and unusual even if it is not "inherently barbaric." <u>Id.</u>

> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

<u>Solem v. Helm</u>, 463 U.S. 277, 292 (1983). A defendant may raise two types of Eighth Amendment challenges to his sentence: He may

raise an "as-applied" challenge on the grounds that "the length of a certain term-of-years sentence [is] disproportionate 'given all the circumstances in a particular case,'" or he may raise a "categorical" challenge asserting "that an entire class of sentences is disproportionate based on 'the nature of the offense' or 'the characteristics of the offender.'"  United States v. Cobler, 748 F.3d 570, 575 (4th Cir. 2014) (quoting Graham, 560 U.S. at 59-60).

Dowell raises only an as-applied challenge to his sentence.

In the context of an as-applied challenge, the [Supreme] Court has explained that the "narrow proportionality principle" of the Eighth Amendment "does not require strict proportionality between crime and sentence," but "forbids only extreme sentences that are grossly disproportionate to the crime." Before an appellate court concludes that a sentence is grossly disproportionate based on an as-applied challenge, the court first must determine that a "threshold comparison" of the gravity of the offense and the severity of the sentence "leads to an inference of gross disproportionality." In the "rare case" that a reviewing court concludes that such an inference may be drawn, the court is required to compare the defendant's sentence: (1) to sentences for other offenses in the same jurisdiction; and (2) to sentences for similar offenses in other jurisdictions. If this extended analysis validates the threshold determination that the sentence is grossly disproportionate, the sentence is deemed "cruel and unusual" punishment under the Eighth Amendment.

Id. (internal citations omitted).

This "'extensive proportionality analysis' is required 'only in those cases involving life sentences without parole,' or, alternatively, in cases involving 'terms of years without

parole' that are functionally equivalent to life sentences 'because of [the defendants'] ages.'" Id. at 578 (quoting United States v. Rhodes, 779 F.2d 1019, 1028 (4th Cir. 1985) (emendations in original)); cf. Rhodes, 779 F.2d at 1028–29 (requiring only "simple matching" of facts against Solem principles where the sentence is for a term of years). As the First Circuit has observed, "instances of gross disproportionality will be hen's-teeth rare," United States v. Polk, 546 F.3d 74, 76 (1st Cir. 2008), and the Supreme Court has held a sentence of life without parole to run afoul of the Eighth Amendment only once, in Solem, where the defendant had pleaded guilty to uttering a "no account" check for $100. 463 U.S. at 281–84, 295 (noting that Helm was convicted of "'one of the most passive felonies a person could commit'"); see also Cobler, 748 F.3d at 575–76.

Importantly, we recently addressed and rejected a nearly identical challenge to a lengthy sentence in United States v. Cobler. Cobler, who was twenty-eight years old, pleaded guilty to three counts of production of child pornography, one count of transportation of child pornography, and one count of possession of child pornography. Id. at 574. The district court imposed a Guidelines sentence of 1,440 months, or 120 years. Id. On appeal, this Court began by considering "whether a threshold comparison of the gravity of Cobler's offenses and the severity

11

of his sentence leads us to infer that his sentence is grossly disproportionate to his crimes." Id. at 579–80. We rejected Cobler's as-applied proportionality challenge, saying:

> Given the shocking and vile conduct underlying these criminal convictions, we hold that Cobler has failed to substantiate the required threshold inference of gross disproportionality. Even assuming, without deciding, that Cobler's 120-year term of imprisonment is functionally equivalent to a sentence of life imprisonment without the possibility of parole, we conclude that Cobler's multiple child pornography crimes are at least as grave as [possession of 672 grams of cocaine] in [Harmelin v. Michigan], which the Supreme Court deemed sufficiently egregious to justify a similar sentence. See 501 U.S. at 996.

Cobler, 748 F.3d at 580 (footnote omitted).

As Dowell's counsel acknowledged at argument, this case is indistinguishable from Cobler. In Cobler, we noted that "Cobler possess[ed] large quantities of child pornography"; "created depictions of his own sexual exploitation, molestation, and abuse of a four-year-old child"; and "was aware that his sexual contact with the child could have caused the child to contract Cobler's serious communicable disease." 748 F.3d at 580. Although Dowell did not expose his victims to the risk of disease, he nevertheless possessed tens of thousands of images of child pornography, abused extremely young victims —— aged three and five —— and was convicted of many more counts than Cobler had been. Dowell has advanced no reason, and we see

12

none, to depart from the analysis of Cobler, and therefore we reject Dowell's Eighth Amendment challenge.

Moreover, even were we not bound by our recent case law, Dowell has not shown that his sentence is so grossly disproportionate as to run afoul of the Eighth Amendment. As in Cobler, we may assume, without deciding, that Dowell's eighty-year sentence -— lasting until he is 127 years of age -— is the functional equivalent of a life sentence without the possibility of parole.[2] However, Dowell has not shown that he can survive even a "threshold comparison" between the severity of his crime and his punishment. See Graham, 560 U.S. at 60.

Dowell argues that his punishment is disproportionate because his crimes were nonviolent. According to Dowell, "the child was never placed in any danger"; was "not physically injured in any way, shape, or form"; and was not penetrated, and therefore Dowell has been given an unduly severe sentence for a

---

[2] In so assuming, we note that the district court expressly stated its intent to craft a life sentence without the possibility of parole in accordance with the Guidelines' range of life and rejected the Government's request to impose a sentence of 4,560 months, or 380 years, because it made "no practical sense" in relation to the defendant's life expectancy. J.A. 193. Because neither party has objected to the district court's characterization of its sentence, we also will treat it as a life sentence for Guidelines purposes. We express no view on the district court's interpretation of U.S.S.G. § 5G1.2 to reach a Guidelines range of 960 months instead of 4,560 months because that issue has not been raised on appeal.

13

nonviolent crime. Appellant's Br. 10. We reject out of hand the notion that the sexual abuse of a child can be considered nonviolent merely because it does not lead to physical or life-threatening injuries. Simply put, Dowell's acts of abuse inflicted injuries that may run deeper and last longer than any physical injuries, and the notion that, in abusing his victims, he did not expose them to danger lacks any rational basis. This particularly is so where, as here, the videos Dowell made of his young victims were posted on the Internet, exposing them to future embarrassment, humiliation, and psychological injury. "It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." New York v. Ferber, 458 U.S. 747, 758 n.9 (1982) (citations omitted). The mere fact that Dowell's acts of abuse did not inflict immediate physical injury does not render his sentence disproportionate. Because Dowell has not raised an inference of gross disproportionality -- and because he likely could not do so in light of Cobler -- we conclude that his 960-month sentence does not constitute cruel and unusual punishment under the Eighth Amendment.

III.

The reasonableness of a sentence under 18 U.S.C. § 3553(a) is reviewed under an abuse of discretion standard, irrespective

of whether the sentence imposed is within or outside of the Guidelines range. <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007). This reasonableness review has both a procedural and a substantive component. <u>United States v. Boulware</u>, 604 F.3d 832, 837 (4th Cir. 2010). This analysis requires us to

> first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines range as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.

<u>Gall</u>, 552 U.S. at 51. In reviewing the application of the Sentencing Guidelines, "[i]f the issue turns primarily on a factual determination, an appellate court should apply the 'clearly erroneous' standard." <u>United States v. Daughtrey</u>, 874 F.2d 213, 217 (4th Cir. 1989). However, a question relating to the legal interpretation of the Guidelines is subject to <u>de novo</u> review. <u>United States v. Schaal</u>, 340 F.3d 196, 198 (4th Cir. 2003).

### A.

Dowell first argues that the district court impermissibly double-counted when it applied both U.S.S.G. § 2G2.2(b)(5) and § 4B1.5(b)(1), both of which provide for five-level increases

for a pattern of unlawful sexual conduct. "Double counting occurs when a provision of the Guidelines is applied to increase punishment on the basis of a consideration that has been accounted for by application of another Guideline provision or by application of a statute." United States v. Reevey, 364 F.3d 151, 158 (4th Cir. 2004). "[T]here is a presumption that double counting is proper where not expressly prohibited by the guidelines." United States v. Hampton, 628 F.3d 654, 664 (4th Cir. 2010).

There is no question that the Guidelines provisions in question account for similar conduct. Section 2G2.2(b)(5) provides for a five-level increase above the base offense level for, *inter alia*, transportation of child pornography where "the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." Section 4B1.5(b) states:

> In any case in which the defendant's instant offense of conviction is a covered sex crime, . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
> (1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three.

In United States v. Schellenberger, an unpublished panel opinion, we held that applying both of these provisions to the same conduct was permitted because it was not expressly prohibited by the Guidelines. 246 F. App'x 830, 832 (4th Cir. 2007). Further, we observed that "§ 4B1.5(b)(1) states that the

16

five-level enhancement is to be added to the offense levels determined under Chapters Two and Three. Thus, the guidelines intend the cumulative application of these enhancements." Id.

Dowell has cited no case law to the contrary, nor has he provided any support for his position other than to argue that both provisions cover the same conduct in this case. But this is not a sufficient basis to find impermissible double-counting. See Hampton, 628 F.3d at 664. And in any event, though covering similar conduct, § 2G2.2(b)(5) and § 4B1.5(b)(1) serve distinctly different goals. Whereas § 2G2.2(b)(5) provides an enhancement for offense-specific conduct as it relates to Dowell's child pornography offenses, § 4B1.5(b)(1) is located in Chapter Four of the Guidelines under the provisions covering "Career Offenders and Criminal Livelihood." This placement is explained by the background commentary, which states that § 4B1.5(b)(1) "applies to offenders . . . who present a continuing danger to the public," and is derived from congressional directives "to ensure lengthy incarceration for offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors." § 4B1.5(b)(1) cmt. background. That is to say, § 4B1.5(b)(1) aims not merely to punish a defendant for the specific characteristics of the offenses of conviction, as does § 2G2.2(b)(5), but to allow a district court to impose an enhanced period of incarceration

17

because the defendant presents a continuing danger to the public. These distinct aims further support our conclusion that the application of both Guidelines sections does not constitute impermissible double counting.

B.

Dowell next contends that the application of a "vulnerable victim" enhancement under § 3A1.1(b)(1) was improper where the district court already applied enhancements under §§ 2G2.1(b)(1)(A) and 2G2.2(b)(2) for victims under the age of twelve. Whether the vulnerable victim enhancement applies in a case such as this is a question of first impression in this circuit.

Section 2G2.1(b)(1) of the Guidelines provides for a four-level enhancement with respect to, *inter alia*, the production of child pornography "[i]f the offense involved a minor who had (A) not attained the age of twelve years," and a lesser enhancement if the victim had "attained the age of twelve years but not attained the age of sixteen years." U.S.S.G. § 2G2.1(b)(1). Section 2G2.2(b)(2) provides for a two-level enhancement with respect to, *inter alia*, trafficking in child pornography "[i]f the material involved a prepubescent minor or a minor who had not attained the age of 12 years." U.S.S.G. § 2G2.2(b)(2).

Chapter Three of the Guidelines provides for an additional, two-level upward adjustment with respect to any conviction, not

18

just those involving child pornography, "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). The Guidelines commentary defines a "vulnerable victim" as "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2. Importantly, however, the commentary directs:

> Do not apply subsection (b) if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age.

Id.

At sentencing, the district court relied on recent case law from two of our sister circuits, United States v. Wright, 373 F.3d 935 (9th Cir. 2004), and United States v. Jenkins, 712 F.3d 209 (5th Cir. 2013), and adopted the PSR's recommendation to apply the vulnerable victim adjustment to each of counts one through ten -- relating to the production of child pornography with respect to Minor A -- and to count thirteen. The court declined to apply the adjustment to the counts involving Minor

B.   As we explain, the district court erred in applying the adjustment.

In Wright, the defendants were convicted of producing child pornography involving their eleven-month-old son, as well as other victims.   The district court applied the vulnerable victim adjustment based on "the extremely young age of some of the children involved, the extremely small physical size, the extreme vulnerability of these children, and the fact that they were made available to [another individual] as well."   373 F.3d at 942 (internal quotation marks omitted).   On appeal, the Ninth Circuit held that the vulnerable victim adjustment was appropriate "because the victims' vulnerability [was] not fully 'incorporated' in the victim-under-12 adjustment."   Id. at 943. Specifically, Wright found that whereas "[m]ost children under 12 are well beyond the infancy and toddler stages of childhood," the under-twelve enhancement does not account for

> these especially vulnerable stages of childhood . . . , so there is no double-counting of age in considering infancy or the toddler stage as an additional vulnerability.   Though the characteristics of being an infant or toddler tend to correlate with age, they can exist independently of age, and are not the same thing as merely not having "attained the age of twelve years."

Id.   According to the court, "[t]he extreme youth and small physical size factors . . . account for traits and characteristics -- such as an inability to communicate, an

20

inability to walk, and . . . increased pain upon sexual penetration -- that roughly correlate with age, but are not necessarily related to age," and "can exist independently of age." Id. Thus, the Ninth Circuit approved of the application of the vulnerable victim enhancement on the basis of the district court's factual findings.

Subsequently, the Ninth Circuit extended the reasoning that applied to infants in Wright to reach toddlers as well, finding that the notion that it "should distinguish Wright on the ground that the victim in Wright was an infant, whereas [] a toddler victim could have walked away, [was] so weak as to be frivolous," as a toddler also has a diminished ability to resist that an older child might possess. United States v. Holt, 510 F.3d 1007, 1011–12 (9th Cir. 2007).

More recently, the Fifth Circuit adopted the holding of Wright in Jenkins. Jenkins was charged with several counts arising out of his possession and distribution of child pornography primarily involving seven- to ten-year-olds but including a number of "infants/toddlers," some of whom were depicted being penetrated, visibly hurt, or bound. Jenkins, 712 F.3d at 211. Jenkins' pre-sentence report recommended application of a vulnerable victim adjustment based on the existence of images "depict[ing] sexual abuse and exploitation of young and small children who are unable to resist or object

to the abuse or exploit [sic], making them susceptible to abuse and exploitation and thus, vulnerable victims." Id. (internal quotation marks omitted). The district court agreed with that recommendation over Jenkins's objection and applied the adjustment.

The Fifth Circuit upheld the vulnerable victim adjustment, and explained its reasoning as follows:

> Consider an enhancement for a victim under the age of twelve: A person who is unable to walk is no doubt especially vulnerable to many crimes. Most children under the age of twelve are able to walk. Some children under twelve, infants, are unable to walk due to extreme young age. Other children may be unable to walk due to paralysis. We see no reason why a "vulnerable victim" enhancement based on inability to walk should be applied to paralyzed children but not to infants. Although an infant's inability to walk is "related to age," it is not accounted for by the "victim under twelve" enhancement.

Id. at 213–14.

The Fifth Circuit found no "logical reason why a 'victim under the age of twelve' enhancement should bar application of the 'vulnerable victim' enhancement when the victim is especially vulnerable, even as compared to most children under twelve." Id. at 214. Because the extreme youth of the victims was not fully encompassed in the "under twelve" enhancement, the Fifth Circuit found that it therefore was not "incorporated in the offense guideline" as required by U.S.S.G. § 3A1.1 application note 2.

Over the course of the lengthy sentencing hearing, the district court gave careful consideration to the facts of this case, and analyzed them thoroughly in light of <u>Jenkins</u> and <u>Wright</u>. On the applicability of the vulnerable victim adjustment, the court explained as follows:

> Now, in this case I watched the video. And it is clear to me -- from the video clip that we have seen in evidence in this case, it is clear to me of how vulnerable this child is and how -- the [three-year-old] minor victim A, and how her cognitive abilities just do not allow her to appreciate what is going on with her, what is being done to her, and the progression of this vile abuse that was inflicted on her.
>
> From my own viewing of the videos and looking at what happened over the progression, seeing that she plainly doesn't understand what is going on here, focusing on her cognitive development, I believe that this victim is particularly vulnerable.
>
> First and foremost, the concern of this Court notes that the psychological effect of this abuse is clear based on the progression of abuse in this case due to the vulnerabilities of minor child A. At first the Court notes that the child is giggling and laughing and saying, "Stop it," and attempting to put her pants back on, her underpants back on, as the defendant was beginning to groom her and begin his abuse. And due to her cognitive state, she just thought he was just playing with her. He was picking her up, upside down, laughing. She's laughing particularly when she's held upside down while he was doing other things.
>
> And it is clear from viewing this progression, as depicted in the evidence, throughout the several months that this happened, the child went from telling the defendant "No" to requesting such conduct, demonstrating the particular vulnerability psychologically in this child.
>
> In that regard, the Court notes what I pointed out earlier, the different levels of abuse inflicted on minor victim A and [five-year-old] minor victim B. Both these children are under 12 years old. And

2G2.2(b)(2) treats them the same, treats them the
same. And that points up more than anything for me
why 2G2.2(b)(2) doesn't cover the waterfront here.
     There is a stark difference in the abuse
inflicted on minor victim A and minor victim B. And
that points up the very reason why the under-12
enhancement in 2G2.2(b)(2) paints with too broad a
brush. Minor victim A is much less cognitively
capable of understanding her abuse. She's much more
psychologically susceptible to accepting and welcoming
this conduct than an older child would be. She is, in
fact, a more vulnerable victim. And I believe the
two-point enhancement is not double counting.
     The Court is persuaded on the specific facts of
this case that the <u>Jenkins</u> and <u>Wright</u> cases got it
right, and I'm going to apply it.

J.A. 172–73.

There is no question that, read alone, §§ 2G2.1(b)(1) and

2G2.2(b)(2) appear to treat the abuse of a mature and

knowledgeable eleven-year-old the same as that of an infant for

sentencing purposes. For this reason, <u>Jenkins</u>, <u>Wright</u>, and the

ruling below all hold an inherent appeal. However, the Supreme

Court has recognized that "commentary in the Guidelines Manual

that interprets or explains a guideline is authoritative unless

it violates the Constitution or a federal statute, or is

inconsistent with, or a plainly erroneous reading of, that

guideline." <u>Stinson v. United States</u>, 508 U.S. 36, 38 (1993).

And here, the commentary clearly states that "if the offense

guideline provides an enhancement for the age of the victim,

[the vulnerable victim adjustment] would not be applied unless

the victim was unusually vulnerable for reasons unrelated to

age." U.S.S.G. § 3A1.1 cmt. n.2. Therefore, the question we must consider is not whether Minor A was particularly vulnerable for reasons distinct from those that would apply to, for example, a child of twelve, but whether she was vulnerable for reasons that do not relate to her age at all.

With this in mind, we find that, although the district court made detailed and careful factual findings, its ultimate reasons for applying the vulnerable victim adjustment relied on age-related factors. Most importantly, the court noted that Minor A's "cognitive abilities just do not allow her to appreciate what is going on with her, what is being done to her," J.A. 172, as compared with Minor B, who was better able to understand the abuse to which she was exposed because she was two years older. And it specifically found that Minor A was "much more psychologically susceptible to accepting and welcoming this conduct than an older child would be." Id. at 173. This justification unavoidably rests on the extremely young age of Minor A, because the record is devoid of any facts that would suggest that Minor A's cognitive ability and psychological state was a product of anything other than her age. These reasons simply are not "unrelated to age," but focus closely on the differences between a three-year-old and an older child under twelve. Accordingly, it was error to apply the vulnerable victim adjustment on the basis of these findings.

To the extent that <u>Wright</u> and <u>Jenkins</u> can be read to approve of applying the adjustment for conditions that, like Minor A's cognitive development or psychological susceptibility, necessarily are related to her age, we respectfully disagree with those cases. Because Minor A's characteristics were "related to [her] age," we find that their consideration is foreclosed by the application note to § 3A1.1.

This is not to say that conditions that make a three-year-old more vulnerable than an eleven-year-old cannot support the application of the vulnerable victim adjustment allowed by § 3A1.1(b)(1), provided that they are unrelated to age. <u>See, e.g.</u>, <u>United States v. Grubbs</u>, 585 F.3d 793, 805–06 (4th Cir. 2009) (upholding adjustment based on defendant giving higher grades, gifts, and promises of a scholarship to certain children and gaining the trust of another victim's ill single mother); <u>see also</u> <u>United States v. Willoughby</u>, 742 F.3d 229, 241 (6th Cir. 2014) (approving of adjustment for sixteen-year-old based on her status as "a homeless runaway with a history of abuse and neglect"); <u>United States v. Irving</u>, 554 F.3d 64, 75 (2d Cir. 2009) (affirming application of adjustment based on the fact that the child victims were homeless, impoverished, and without "parental or other appropriate guidance"); <u>United States v. Gawthrop</u>, 310 F.3d 405, 412 (6th Cir. 2002) (affirming adjustment with respect to defendant's three-year-old

26

granddaughter on the basis of familial relationship, not age). But in this case, where Minor A's vulnerability was based on her cognitive and psychological development and intimately was linked to her age, the adjustment does not apply.

Our view is buttressed further by the fact that, although the Guidelines provisions relating to production of child pornography provide offense-specific enhancements for victims under the age of sixteen, § 2G2.1(b)(1)(B), and Guidelines provisions relating to various child pornography convictions provide offense-specific enhancements for victims under the age of twelve, §§ 2G2.1(b)(1)(A) and 2G2.2(b)(2), the Sentencing Commission has not defined a younger age bracket (such as children under the age of four) that would merit an additional enhancement. Although the Government speculated at argument that this is because the Guidelines have not yet caught up to changes in the patterns of abuse that have occurred over the last decade, the distinction between the inherent vulnerability of an eleven-year-old child and a toddler is not new. In placing the relevant line at twelve years of age, the Sentencing Commission divided the abuse of a prepubescent child from the abuse of a pubescent or post-pubescent child, and implicitly precluded courts from drawing additional lines below that point. We read this not as a statement that three-year-olds and eleven-year-olds are the same for all purposes, but that, in weighing

27

the proper level of punishment for child pornography offenses, the considered judgment of the Sentencing Commission is that, once the offense involves a child under twelve, any additional considerations based solely on age simply are not appropriate to the Guidelines calculation.  We will not upset the comprehensive and delicate balancing by the Sentencing Commission in crafting the Guidelines.[3]

Although the vulnerable victim enhancement should not have been applied, "sentencing error is subject to harmlessness review.  Sentencing 'error is harmless if the resulting sentence [is] not longer than that to which [the defendant] would otherwise be subject.'"  United States v. McManus, 734 F.3d 315, 318 (4th Cir. 2013) (quoting United States v. Mehta, 594 F.3d

---

[3] The Fifth Circuit purported to recognize an inherent flaw in our reading of § 3A1.1(b)(1) that, "[f]or example, the specific offense guidelines for some crimes provide enhancements based on the young age of the victim but do not provide enhancements based on the old age of the victim." Jenkins, 712 F.3d at 213. According to the Fifth Circuit, a literal reading of the Guidelines commentary language would "seemingly prohibit a court from applying the 'vulnerable victim' enhancement where a victim of one of these crimes was especially vulnerable due to extreme old age." Id.  However, if a Guideline provides an enhancement for youth but not for old age, we cannot see how the age of an elderly victim "is incorporated in the offense guideline," U.S.S.G. § 3A1.1 cmt. n.2, and so we see no problem with applying the vulnerable victim adjustment for an elderly victim pursuant to §3A1.1(b)(1) in such circumstances.  In any event, because the offenses at issue here are child pornography offenses, the old age of a victim cannot be an aggravating factor under the relevant Guidelines provisions.

277, 283 (4th Cir. 2010) (alterations in original)).  A review of the record shows that the application of the vulnerable victim adjustment did not affect the ultimate Guidelines range or Dowell's sentence.

The district court applied the vulnerable victim adjustments to counts one through ten and count thirteen, yielding seven counts with a total offense level of 40 and four with a total offense level of 42.  J.A. 340–48.  Without the vulnerable victim adjustment, each of these offense levels would be decreased by two, resulting in seven counts with an offense level of 38 and four with an offense level of 40, to be added to counts eleven and twelve with a total offense level of 38.[4]  This lowers the highest offense level from 42 to 40, but leaves unchanged the number of units to be accounted for under U.S.S.G. § 3D1.4, yielding the same five-level increase to a combined offense level of 45.  Adding the five-level enhancement under § 4B1.5(b)(1) and subtracting three levels for acceptance of responsibility under § 3E1.1, we arrive at a final offense level

---

[4] The PSR indicated that the images of child pornography on Dowell's computer included images of "a prepubescent girl bound and blindfolded," J.A. 347, which may have been a reason unrelated to age sufficient to support a vulnerable victim adjustment with respect to count thirteen.  However, the only basis for the adjustment articulated by the district court was the vulnerability of Minor A and therefore we do not apply the vulnerable victim adjustment to count thirteen in the harmlessness analysis.

of 47, which still is above the maximum Guidelines offense level of 43.   Accordingly, even without the vulnerable victim enhancement, Dowell's Guidelines calculation would remain functionally identical, and the error in applying the vulnerable victim adjustment was harmless.

C.

Finally, Dowell argues that his sentence is substantively unreasonable and "failed to comply with the objectives of the Federal Sentencing Statute," 18 U.S.C. § 3553(a).   Appellant's Br. 15.   "As we have held repeatedly, a sentence within a properly calculated advisory Guidelines range is presumptively reasonable.   [A] defendant can only rebut the presumption by demonstrating that the sentence is unreasonable when measured against the § 3553(a) factors."   United States v. Montes-Pineda, 445 F.3d 375, 379 (4th Cir. 2006).   Section 3553(a) requires a district court to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of the statute, considering, inter alia:

    (1) the nature and circumstances of the offense and
        the history and characteristics of the defendant;
    (2) the need for the sentence imposed--
        (A) to reflect the seriousness of the offense, to
        promote respect for the law, and to provide just
        punishment for the offense;
        (B) to afford adequate deterrence to criminal
        conduct;
        (C) to protect the public from further crimes of
        the defendant; and

30

> (D) to provide the defendant with needed
> educational or vocational training, medical care,
> or other correctional treatment in the most
> effective manner; [and]
> . . . .
> (6) the need to avoid unwarranted sentence disparities
> among defendants with similar records who have
> been found guilty of similar conduct . . . .

"A sentence that does not serve the announced purposes of § 3553(a)(2) is unreasonable. . . . Likewise, a sentence that is greater than necessary to serve those purposes is unreasonable." United States v. Shortt, 485 F.3d 243, 248 (4th Cir. 2007).

Dowell primarily argues that a sentence of 960 months necessarily is unreasonable for a first offense that is not a homicide. See Appellant's Br. 15–20. But as a threshold matter, the 960-month sentence imposed by the district court was within the Guidelines range of life. J.A. 306. It therefore is presumptively reasonable on appeal. Rita v. United States, 551 U.S. 338, 347 (2007); Cobler, 748 F.3d at 582.

Further, the record in this case demonstrates that the district court meticulously considered the § 3553(a) factors in crafting a sentence that, in the court's opinion, was sufficient but not greater than necessary to punish Dowell's conduct, deter future crimes, and prevent him from being able to reoffend. See J.A. 311–15. We found a similar sentence to be reasonable in Cobler, 748 F.3d at 582, and Dowell has provided no reason to upset the judgment of the district court here.

Accordingly, we conclude that the district court's sentence properly considered the applicable Guidelines range, the nature and the circumstances of the offenses, and the other necessary factors under § 3553(a), and that the sentence therefore is substantively reasonable.

IV.

For these reasons, we affirm the district court's judgment.

AFFIRMED